# United States Court of Appeals
## For the First Circuit

No. 17-1377

IN RE: APPLICATION OF GEORGE W. SCHLICH

GEORGE W. SCHLICH,

Petitioner, Appellant,

v.

THE BROAD INSTITUTE, INC., FENG ZHANG,
NAOMI HABIB, and LE CONG,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSCHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

Melissa Arbus Sherry, with whom Michael A. Morin, Ryan C.
Grover and Latham & Watkins LLP were on brief, for appellant.
Raymond N. Nimrod, with whom William B. Adams, Matthew D.
Robson and Quinn Emanuel Urquhart & Sullivan LLP were on brief,
for appellees.

June 20, 2018

**TORRUELLA**, **Circuit Judge**.     Petitioner-Appellant
George W. Schlich, a patent agent for Intellia Therapeutics, Inc.,
appeals from the district court's denial of a petition for
discovery under 28 U.S.C. § 1782.  That statute allows a party to
file a petition in district court to obtain discovery for use in
a foreign proceeding.[1]  Here, Schlich sought discovery from
Respondents-Appellees The Broad Institute, Inc., Dr. Feng Zhang,
Dr. Naomi Habib, and Dr. Le Cong (collectively, "Broad") in
relation to opposition proceedings currently before the European
Patent Office ("EPO").[2]  In the opposition proceedings, Schlich
challenges the validity of several of Broad's European patents
involving CRISPR-Cas9 technology used in the programmable genome
editing of mammalian cells.  Schlich contends that the district

---

[1]  28 U.S.C. § 1782(a) provides in pertinent part:

> The district court of the district in which a person
> resides or is found may order him to give his testimony
> or statement or to produce a document or other thing for
> use in a proceeding in a foreign or international
> tribunal, including criminal investigations conducted
> before formal accusation. The order may be made pursuant
> to a letter rogatory issued, or request made, by a
> foreign or international tribunal or upon the
> application of any interested person and may direct that
> the testimony or statement be given, or the document or
> other thing be produced, before a person appointed by
> the court.

[2]  An opposition proceeding before the EPO "allows any member of
the public to challenge a European patent within nine months of
its grant."

court erred in requiring him to prove the EPO's receptivity to the district court's assistance in providing the requested discovery, and in denying the request for discovery under § 1782 for lack of relevance to the foreign proceeding. After careful consideration, we affirm.

## I. Background

### A. Factual Background

The Broad Institute, Inc. is a nonprofit medical research organization founded in 2003 by Eli and Edythe Broad, alongside Harvard University, Harvard-affiliated hospitals, and the Massachusetts Institute of Technology. The nonprofit launched in 2004, focusing on the development of genomic research for the advancement of medical science. Dr. Feng Zhang is a member of the Broad Institute, and both Dr. Naomi Habib and Dr. Le Cong are Postdoctoral Associates who worked with Dr. Zhang. Dr. Zhang dedicates part of his research to the CRISPR-Cas9 system for genome editing.

Intellia is a "genome editing company" whose primary focus is the development of "potentially curative therapeutics" using the CRISPR-Cas9 system. Schlich is a European patent attorney providing legal services to Intellia in the EPO opposition proceedings against four of Broad's patents related to CRISPR-Cas9. Dr. Jennifer Doudna is a founding member of Intellia, and

-3-

the company holds an exclusive license to Dr. Doudna's intellectual property in the CRISPR-Cas9 therapeutics field.

The CRISPR-Cas9 system emerged from research on certain bacteria that can precisely target and "carve up" genetic material. When applied to human DNA, the potential curative value of this technology is allegedly tremendous, and its potential worth is estimated to be in the billions of dollars.

Dr. Doudna and Dr. Emmanuelle Charpentier led a team working on the bacteria associated with the CRISPR-Cas9 technology and, on May 25, 2012, filed a provisional patent application[3] at the United States Patent and Trademark Office ("U.S.P.T.O.") for certain "methods and compositions" for "DNA modification." Additionally, they published an article describing their findings in June 2012. See Martin Jinek et al., A Programmable Dual-RNA-Guided DNA Endonuclease in Adaptive Bacterial Immunity, 337(6096) Science 816 (2012).

---

[3] A provisional patent application "serves as a placeholder with the [U.S.P.T.O.] that grants the applicant 'the benefit of priority' for an invention," United States v. Camick, 796 F.3d 1206, 1218 (10th Cir. 2015) (quoting U.S. Patent & Trademark Office, Manual of Patent Examination Procedure § 201.04 (9th ed. 2014)), if the applicant subsequently files a non-provisional application within a certain period of time, see Chinsammy v. United States, 417 F. App'x 950, 951 (Fed. Cir. 2011) (citing 35 U.S.C. §§ 119, 154).

On October 5, 2012, Dr. Zhang and other members of the Broad team, including Dr. Habib and Dr. Le Cong, submitted a manuscript that "reported the first successful programmable genome editing of mammalian cells using CRISPR-Cas9." On December 12, 2012, Broad filed its first provisional patent application with the U.S.P.T.O. relating to genomic sequence manipulation, and subsequently filed several other related provisional patent applications in the following months.

Based on two provisional patent applications filed by Broad in December 2012 and January 2013, Thomas Kowalski, a U.S. Patent Attorney, filed a Patent Cooperation Treaty ("PCT") application[4] on behalf of Broad. Since Broad's provisional patent applications included various inventions, Kowalski and Dr. Smitha Uthaman conducted an inventorship study to determine the different inventions and the corresponding contributions from each inventor. Subsequently, Broad filed ten separate PCT applications. The subject matter of the initial provisional patent applications was divided among these PCT applications listing different inventors and a "divided priority" based on the findings of the inventorship

---

[4] A PCT application, also known as an international patent application, allows an applicant to simultaneously seek protection for an invention in over 150 countries. See World Intellectual Prop. Org., http://www.wipo.int/pct/en/ (last visited June 8, 2018).

study.  Eventually, the PCT applications resulted in several European patents, which Intellia now challenges at the EPO.

Schlich filed oppositions with the EPO seeking the revocation of four of Broad's European patents.  At the opposition proceedings, Schlich argued, among other things, that Broad's European patents cannot claim right of priority to Broad's provisional patent applications filed with the U.S.P.T.O. because the applicants listed in the latter are not the same as those listed in the subsequent PCT applications, as is required by European patent law.  In response, Broad argued that United States law, and not European law, should determine whether its European patents can claim priority to the provisional applications because those provisional patent applications were filed in the United States.  According to Broad, United States law allows multiple inventions to be disclosed and multiple inventors to be listed in a provisional application without requiring that every inventor have contributed to every invention.  The right of priority from that provisional application could then be severed into different PCT applications without requiring complete identity between the inventors listed in both applications, as long as the applicant "claim[s] priority in [the PCT] application with regard to an invention to which [he or she] contributed."  In support of its contention that the proper procedure was followed here, Broad

-6-

submitted a declaration from Kowalski describing the process he followed and the findings of his inventorship study.

## B. Procedural History

In September 2016, Schlich filed an application for discovery under 28 U.S.C. § 1782 in the United States District Court for the District of Massachusetts. Schlich sought documents and testimony from Broad. The discovery sought focused on the inventorship study conducted by Kowalski and Dr. Uthaman, as well as the assignment of the relevant rights over the corresponding inventions. Broad opposed discovery and a hearing was held on October 24, 2016. At the hearing, the parties disputed, among other things, whether the discovery sought was relevant to the EPO proceedings and whether the EPO would be receptive to the requested discovery. Broad informed Schlich and the court that it would submit a request to the EPO to confirm "that the EPO is not receptive to the discovery sought by [] Schlich." Broad filed the request on October 31, 2016.

On November 1, 2016, the district court ordered supplemental briefing after noting that the parties had not addressed the issue of the EPO's receptivity to the district court's assistance in providing the requested discovery prior to the hearing.[5] The parties then submitted their supplemental

---

[5] The supplemental briefing order directed the parties to address

-7-

briefs. Broad's submission included a declaration from a former EPO official, who stated that the issue presented by Schlich in his § 1782 application "is a potential <u>dispute</u> over inventorship" or "entitlement," yet, "the EPO has no authority or jurisdiction to resolve issues of entitlement," including "whether inventorship is or is not correct." The declarant thus concluded that "discovery relating to this issue would not be considered relevant and therefore would not be considered by the EPO." On December 9, 2016, the district court denied Schlich's petition without prejudice. <u>In re Schlich</u>, 2016 WL 7209565 (D. Mass. Dec. 9, 2016). It found that three of the four statutory requirements of § 1782 were met -- including that the discovery be "for use" in a foreign proceeding -- and assumed without deciding that the fourth requirement was also satisfied. <u>Id.</u> at *3. The court then considered the factors established by the Supreme Court in <u>Intel Corp.</u> v. <u>Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004) (the <u>Intel</u> factors) and concluded, <u>inter</u> <u>alia</u>, that "because the EPO will not make a determination as to inventorship in the [o]pposition proceeding[s]," Schlich had not demonstrated that the

---

the EPO's receptivity issue, including the following questions: "(1) why the Kowalski affidavit was submitted to the EPO, (2) whether the EPO has authority or jurisdiction to resolve issues of inventorship in the pending proceeding, and (3) if it does not have such authority or jurisdiction, how the EPO would be receptive to this Court's assistance in providing the requested discovery."

discovery sought was "relevant" to the opposition proceedings and thus had "failed to show that the EPO would be receptive to the Court's assistance." In re Schlich, 2016 WL 7209565 at *6. Relying heavily on this reasoning, the court denied Schlich's petition, but clarified that if it became clear that the EPO would be receptive to the assistance of the court, or if fairness otherwise required that the decision be reconsidered, Schlich could renew his petition. Id. at *7.

On March 15, 2017, the district court denied Schlich's Motion for Reconsideration. Schlich timely appealed. Shortly after the notice of appeal was filed, the EPO issued a preliminary and non-binding opinion and summoned the parties for oral proceedings.

## II. Discussion

### A. Standard of Review

Because § 1782 is a mechanism for obtaining discovery, and "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery," Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984), we generally review the grant or denial of a discovery request under § 1782 for abuse of discretion, In re Asta Medica, S.A., 981 F.2d 1, 4 (1st Cir. 1992), abrogated on other grounds by Intel Corp., 542 U.S. at 259-61. However, if the district court's decision is

based on an interpretation of the law, we review it <u>de novo</u>. See <u>Santiago-Sepúlveda</u> v. <u>Esso Standard Oil Co. (P.R.)</u>, 643 F.3d 1, 4 (1st Cir. 2011); <u>see also</u> <u>Consorcio Ecuatoriano de Telecomunicaciones S.A.</u> v. <u>JAS Forwarding (USA), Inc.</u>, 747 F.3d 1262, 1268 (11th Cir. 2014); <u>In re Bayer AG</u>, 146 F.3d 188, 191 (3d Cir. 1998).

**B. Section 1782(a)'s statutory requirements and the <u>Intel</u> factors**

Today's § 1782 is the product of over 150 years of Congressional effort and manifests the intent to provide "federal-court assistance in gathering evidence for use in foreign tribunals." <u>Intel Corp.</u>, 542 U.S. at 247. The text of § 1782 provides that granting discovery is proper only if: 1) the person from whom discovery is sought "resides or is found" in the district where the court sits; 2) the request seeks evidence (the "testimony or statement" of a person or the production of a "document or other thing") "for use in a proceeding in a foreign or international tribunal"; 3) the request is made by a foreign or international tribunal or by "any interested person"; and 4) the material sought is not protected by "any legally applicable privilege."[6] 28 U.S.C.

---

[6] We note that although the district court and the parties all make reference to these four requirements as the "statutory requirements" of § 1782, some circuits only consider the first three of these as statutory requirements. <u>See</u>, <u>e.g.</u>, <u>Certain Funds, Accounts and/or Inv. Vehicles</u> v. <u>KPMG, L.L.P.</u>, 798 F.3d 113, 117 (2d Cir. 2015). We do not delve into this because it has not been raised by the parties and, in any event, the statute does

§ 1782(a). If all of these statutory requirements are met, the district court is authorized, but not required, to provide judicial assistance by permitting discovery. Intel Corp., 542 U.S. at 247; see 28 U.S.C. § 1782(a) ("The district court . . . may order . . . .") (emphasis added).

The district court's discretion to allow discovery if all § 1782 requirements are met is not boundless. Rather, district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." Intel Corp., 542 U.S. at 252 (quoting Advanced Micro Devices, Inc. v. Intel Corp., 292 F.3d 664, 669 (9th Cir. 2002)). The Supreme Court has identified four discretionary factors that also "bear consideration" in arriving at a decision. Id. at 264. The first factor to consider is whether the person from whom discovery is sought is a party to the foreign proceeding, in which case "the need for § 1782(a) aid generally is not as apparent" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Id. The second

---

prohibit compelling a person "to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. §1782(a).

-11-

factor, at issue here, was adopted from a Senate Report explaining that a court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Id. (citing S. Rep. No. 88-1580, at 7 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (hereinafter "Senate Report")). The third factor to consider is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 265. Finally, the fourth factor addresses whether the request is "unduly intrusive or burdensome" to the extent that it should either be "trimmed" or rejected outright. Id. In sum, a district court must first determine whether the statutory requirements are met. If they are, the district court should then consider the four discretionary factors before arriving at a decision.

## C. The district court's decision

Here, the district court addressed the statutory requirements and the discretionary Intel factors before arriving at its decision. It found that the first three statutory requirements were met, and assumed without deciding that the fourth requirement was also satisfied. In re Schlich, 2016 WL 7209565 at *6. Specifically as to the "for use" requirement, the district

-12-

court noted as "undisputed" that "the material is requested for use in a pending [o]pposition proceeding before the EPO." Id. at *3. It then considered the Intel factors. The district court found that the last two Intel factors weighed in favor of granting the discovery request because the request was "not obviously frivolous" nor appeared to be pursued for "improper means," and because Broad "d[id] not contend that all of the information sought [was] confidential or would be damaging if revealed" and, in any event, the court could "narrowly tailor[]" the request and issue protective orders. Id. at *6-7. The district court, however, found that the first two discretionary factors weighed in favor of denying the petition. Id. at *4-5. Regarding the first Intel factor, the district court noted that Broad is a party in the foreign proceeding and, although Drs. Zhang, Habib, and Le Cong were not named parties, "the information sought from them relates to their employment with Broad" and "appears to come within the EPO's jurisdiction." Id. at *4-5. With respect to the second discretionary factor, the court noted that "[t]he requested discovery relates to the issue of inventorship," yet inventorship determinations or disputes regarding inventorship seemed to be out of the jurisdiction of the EPO in opposition proceedings. Id. at *5-6. The court also noted that Schlich had not shown that the

-13-

requested discovery was relevant to the foreign proceeding.[7]  Id.
at *6.  After considering and balancing all of the Intel factors,
the court denied the petition, primarily because it did not appear
that the foreign tribunal would be "receptive to the assistance of
the [c]ourt in providing discovery."  Id. at *7.

Both parties agree that the only issue on appeal is the
district court's interpretation of the second Intel factor.
Specifically, Schlich argues that, as the party opposing
discovery, Broad should have borne the burden of establishing, by
authoritative proof,[8] that the foreign tribunal would not be
receptive to the discovery sought.  He further claims that the
district court erroneously inverted the burden of proof and
required him to provide authoritative proof that the foreign
tribunal would be receptive to the assistance of the court in
obtaining discovery.  Had the district court properly placed the
burden of proof on Broad, Schlich's argument goes, it would have
granted the discovery request because "Broad had not definitively

---

[7]  The court's memorandum and order stated that "Broad" had not
demonstrated that the discovery sought was relevant, but it is
evident that the court was referring to "Schlich."  Id. at *6.

[8]  "Authoritative proof" has been defined as proof that provides
"clear directive" of something, such as proof "embodied in a forum
country's judicial, executive or legislative declarations."
Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir.
1995).

-14-

and conclusively shown by authoritative proof or otherwise that the EPO would not be receptive to the discovery."

Broad urges us to find Schlich's arguments on appeal waived. It argues that Schlich did not argue below that Broad bore the burden to demonstrate that the EPO would be unreceptive to the requested discovery, "let alone that Broad was required to submit 'authoritative proof' of the EPO's position." Broad further argues that Schlich's arguments also fail on the merits because although Schlich -- as the "party seeking relief" -- did have the burden to prove the elements of his claim, the district court never placed the burden on Schlich to provide "'authoritative proof' of the EPO's receptivity -- indeed, that standard appears nowhere in the district court's decision." Instead, Broad posits, the district court's determination "was based on undisputed evidence submitted by Broad" showing that the requested discovery was irrelevant to the foreign proceedings "and thus did not turn on the burden of proof." We first address Broad's waiver argument. Because we conclude that Schlich's arguments were adequately preserved, we then turn to the merits of his arguments.

## D. The arguments were adequately preserved

Broad acknowledges that Schlich addressed the "differing views" regarding who bore the burden of proof, but claims that he "did not take a position as to which view was correct" and,

-15-

instead, argued in the district court that, under any of these views, the second Intel factor weighed in favor of granting the requested discovery. Broad further argues that Schlich did not develop the legal standard argument below. In consequence, according to Broad, Schlich has waived the arguments he now makes on appeal.

We find the issues adequately preserved below. Schlich raised the burden of proof argument in the district court, both in his writings prior to the hearing and at the hearing. On several occasions, Schlich recognized that the First Circuit has yet to determine the issue, but argued that Broad, as a respondent opposing discovery, should prove the foreign tribunal's unreceptivity. See, e.g., ECF No. 27, Transcript of Hearing at 14 ("[O]nce you show that the discovery is relevant . . . then the burden shifts to the opposing party, to Broad, to demonstrate that the petition should not be granted."); id. at 18 ("[S]everal . . . other courts . . . presume that the foreign tribunal will accept the evidence unless the respondents prove otherwise, in other words, the burden is on the other side to prove that the Court won't be receptive."). Furthermore, Schlich sufficiently developed his legal standard argument by referencing other courts applying that same standard, and by further characterizing his evidence as meeting that standard. See ECF No. 22 at 5 (stating that while

"Broad failed to offer any evidence that the EPO would be unreceptive to the requested discovery, [Schlich] has offered <u>authoritative evidence</u> to the contrary") (emphasis added). Therefore, the issues were adequately preserved. We thus address the merits of Schlich's arguments.

**E. Merits**

The Supreme Court has not established the appropriate burden of proof, if any, for any of the discretionary factors, or the legal standard required to meet that burden. Intel Corp., 542 U.S. at 264-65; see Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 118 (2d Cir. 2015) (noting that the Intel opinion lacks guidance regarding "minimum requirements or tests to be met").

It is undisputed that Schlich, as the party seeking discovery under § 1782, had the burden of establishing that all the statutory requirements were met in order for the court to even consider exercising its discretion to grant the requested relief. See, e.g., Certain Funds, Accounts and/or Inv. Vehicles, 798 F.3d at 120 (burden on movant to establish the statutory requirements); Consorcio Ecuatoriano de Telecomunicaciones S.A., 747 F.3d at 1271 (implying that the movant must "satisf[y] the prima facie requirements" of § 1782). Nor do the parties challenge the district court's conclusion that the first three statutory requirements

were met here, and that the fourth requirement was presumed to have been met. The parties part ways, however, as to what, if any, burden applies to the second Intel factor, and who bears it.

There are differing views as to the second Intel factor. Some courts have ruled that the party opposing discovery bears the burden of proving that the foreign tribunal would be unreceptive to the evidence and that, absent such proof, the factor weighs in favor of granting discovery. See In re Chevron Corp., 633 F.3d 153, 162-63 (3d Cir. 2011) (the party opposing discovery bears the burden of proof as to the second Intel factor and thus must "present adequate evidence to support [its] contention" that the "foreign jurisdiction" is not receptive to the discovery sought); Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) (holding that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. . . . Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects'" (quoting Senate Report at 3783)).

Other courts have required "authoritative proof" of the receptivity of the foreign tribunal before finding that this factor weighs in favor of discovery.  See, e.g., In re Babcock Borsig AG, 583 F. Supp. 2d 233, 241 (D. Mass. 2008) (denying discovery until there was an affirmative indication of the relevant foreign tribunal's receptivity to the requested materials, despite recognizing it had authority under the statute to allow the discovery "even in the face of uncertainty about the [foreign tribunal's] position").

Still other courts have not specifically placed a burden of proof on either party as to any of the Intel factors and, instead, seem to have neutrally analyzed the contentions and supporting evidence presented by all the parties in deciding whether to exercise their discretion.  See, e.g., In re Clerici, 481 F.3d 1324, 1335 (11th Cir. 2007) (considering the "particular factual circumstances" of the case as to the first Intel factor; looking at the entire record to conclude that there was nothing in it "to suggest that the district court should have declined to grant the § 1782 application" as to the second and third Intel factors; and noting that if the party opposing discovery "wished to pursue his 'unduly intrusive' argument" under the fourth Intel factor, that party should have moved the court to limit discovery); see also Consorcio Ecuatoriano de Telecomunicaciones S.A.,

747 F.3d at 1271, 1273 (noting that the Supreme Court established in Intel the "factors to be considered" and refusing to find abuse of discretion where the party opposing the discovery failed to substantiate its "blanket claim" that the discovery sought was unduly burdensome under the fourth Intel factor); Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 598 (7th Cir. 2011) (holding that the district court's denial of discovery was unreasonable because, among other things, the party opposing discovery "refus[ed] to present any evidence" in support of its contention that granting the discovery request would be burdensome); see also In re ASML U.S., Inc., 707 F. App'x 476, 477 (9th Cir. 2017) (second Intel factor met because movant submitted "unrebutted declarations [] that the foreign tribunals would welcome the discoverable evidence"); Chevron Corp. v. Shefftz, 754 F. Supp. 2d 254, 261–62 (D. Mass. 2010) (acknowledging there are different views on who bears the burden of proof on the second Intel factor and taking "a middle ground between the two views").

In Intel, the Supreme Court set out a list of factors -- rather than elements of a claim -- "that bear consideration" by the district court when it exercises its discretion under the statute, leaving it up to the district court to assign those factors weight based on the particular circumstances of each case. Intel Corp., 542 U.S. at 264.  Because the Supreme Court gave

-20-

great flexibility and discretion to district courts in weighing the different factors, we believe the Supreme Court did not intend to place a burden on either party. Rather, it intended for both parties to make their arguments as to all of the factors, and for the district court to then determine whom those factors favor. In this sense, we do not see the factors as creating a "burden" for either party to meet, but rather as considerations to guide the district court's decision. Both parties are free to argue their positions and submit evidence in support thereof, and the district court is then to consider all of that in weighing these factors. Of course, a party who relies on a "blanket assertion" or does not properly substantiate its contentions runs the risk of not persuading the court to exercise its discretion in its favor.

We understand the Second and Third Circuits' reasoning for placing the burden of proof on the party opposing discovery, especially in light of the interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." Euromepa S.A., 51 F.3d at 1100 (quoting Senate Report at 3783). We, however, do not believe that such a requirement is necessary to further these interests. It is clear that, even if all of the statutory requirements are met, the district court may still deny the discovery request if it finds that the weighing of the Intel

-21-

factors favors denial, regardless of whether the respondent has proffered reasoning for the district court to exercise its discretion. Likewise, the fact that courts may adjudicate ex parte petitions under § 1782, see Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) (noting that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte"), and should still consider the Intel factors regardless of the absence of the respondent, further suggests that respondent does not bear a burden of proof as to the discretionary factors. Furthermore, requiring the party opposing discovery to present "authoritative proof" of the foreign tribunal's unreceptiveness, as Schlich proposes, could place pressure on the foreign tribunal and could exacerbate comity and parity concerns which "may be important as touchstones for a district court's exercise of discretion." Intel Corp., 542 U.S. at 261. And, if the opposing party fails to provide such exigent proof, then that could give carte blanche to the moving party for seeking discovery that is only marginally relevant to the foreign proceeding, thus potentially promoting fishing expeditions. We thus believe that the construction we have given to the Intel factors is consistent with the purpose of the statute, as well as with Congress's intent to give the district court broad discretion to determine whether discovery is warranted in a specific case.

Here, both parties argued and submitted authority in support of their respective positions as to the EPO's receptivity to assistance from U.S. courts. Schlich pointed to Akebia Therapeutics, Inc. v. FibroGen, Inc., 793 F.3d 1108, 1112-13 (9th Cir. 2015), where, after the Ninth Circuit affirmed the district court's grant of discovery pursuant to § 1782, the evidence obtained pursuant to that order was submitted to the EPO in an opposition proceeding, and the EPO admitted and relied upon the evidence obtained with the U.S. court's assistance. Broad tried to rebut Schlich's contention by arguing that Akebia is distinguishable inasmuch as the discovery sought there was relevant to the EPO proceedings in that case, as opposed to the discovery being sought here which, according to Broad, is not relevant to these opposition proceedings. Broad also submitted a declaration from a former EPO official stating that the EPO lacked jurisdiction to determine inventorship issues and, thus, that the evidence sought by Schlich would be irrelevant. Schlich did not rebut this evidence. The district court considered these arguments and evidence and determined that, because it appeared that the EPO would not make a determination as to inventorship in the opposition proceedings, the EPO would not be receptive to the evidence sought by Schlich. The district court then concluded that, because Schlich had not demonstrated that the evidence he was seeking was

relevant, as the evidence in Akebia was, he had failed to convince the court that the EPO would be receptive to the court's assistance. Contrary to Schlich's assertions, we do not read the court's decision as placing the burden of proof on Schlich on the receptiveness issue. Instead, our reading indicates that the district court correctly considered all of the arguments and evidence submitted by both parties, found Broad's position and supporting evidence more convincing, and thus found itself unconvinced that the second Intel factor favored granting the discovery.

We note that the district court considered the relevance of the discovery sought as part of its consideration of the EPO's receptivity to assistance from U.S. courts under the second Intel factor. Broad argues that relevance should instead be treated as a threshold statutory factor that the applicant must prove before the court exercises its discretion. We have not had the opportunity to address the role of relevance in the § 1782 analysis since Intel was decided, but the Second Circuit has stated that the statutory requirement prescribing that information be "for use" in a foreign proceeding incorporates a relevance requirement. See Certain Funds, Accounts and/or Inv. Vehicles, 798 F.3d at 120 n.7; Mees v. Buiter, 793 F.3d 291, 299 n.10 (2d Cir. 2015). We agree with the Second Circuit that "it is difficult to conceive how information

that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." Certain Funds, Accounts and/or Inv. Vehicles, 798 F.3d at 120 n.7. Therefore, a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory "for use" requirement, and must be denied before the court reaches the discretionary Intel factors.

However, even when a discovery request is sufficiently relevant to be deemed "for use" in a foreign proceeding, there is nothing that prevents district courts from considering relevancy under the discretionary Intel factors, including the second factor, which focuses on the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel Corp., 542 U.S. at 264. For example, although evidence may be broadly relevant to the applicant's claims in a foreign tribunal, the nature of the foreign proceedings and the rules of the foreign tribunal may relegate the information to marginal relevance. Where the information sought is only marginally relevant, the district court may decide to exercise its discretion to exclude the evidence because other concerns outweigh the need for the discovery. See Mees, 793 F.3d at 299 n.10 (noting that "[a] request that appears only marginally

relevant to the foreign proceeding" may be denied as a discretionary matter because it "may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials'" (quoting Euromepa S.A., 51 F.3d at 1101 n.6)); In Re Green Dev. Corp. S.A. De C.V., No. CCB-15-2985, 2016 WL 640791 (D. Md. 2016) (finding the "for use" requirement satisfied where petitioner requested discovery in relation to an adverse party's alleged ex parte communications with the Honduran Supreme Court in order to submit that discovery to the Honduran Supreme Court and mitigate the effect of the improper communications, but ultimately denying the requested discovery under the Intel discretionary factors because the request was based on "sheer speculation," among other reasons).

Here, although the information sought by Schlich may have been relevant to the EPO opposition proceeding in a general sense, the district court concluded that limitations on the EPO's jurisdiction to consider inventorship rendered it irrelevant. Accordingly, although the district court treated as "undisputed" Schlich's satisfaction of the "for use" statutory requirement, it was well within its discretion to conclude that the second discretionary factor weighed against ordering discovery because the information sought was irrelevant due to the nature of the

proceedings before the EPO, and to deny the discovery request based on that conclusion.

### III. Conclusion

For the reasons stated above, we conclude that the district court did not misapply the law in denying the requested discovery under § 1782. Based on its finding that the requested discovery would be irrelevant under the second Intel factor and, thus, that the EPO would be unreceptive to that information, the district court did not abuse its discretion.[9] Furthermore, the district court also ordered supplemental briefing to better apprehend the issues before it and showed foresight and restraint in denying without prejudice pending further developments. We thus affirm the district court's order denying discovery under § 1782.

**Affirmed.**

---

[9] We decline Broad's invitation to consider the EPO's preliminary and non-binding opinion of April 13, 2017 -- which stated that the discovery proceedings underlying this appeal "are based on issues of entitlement in so far as they attempt to put into question the inventorship as allocated by the distribution of the contribution by Mr. Kowalski," and that "the EPO has no power to resolve . . . matters of entitlement" -- because it was issued after the district court had rendered its decision and, thus, was not considered or relied on by the district court.