**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-2200**

———————

In re: BANCO MERCANTIL DEL NORTE, S.A; INSTITUCION DE BANCA MULTIPLE; GRUPO FINANCIERO BANORTE; ARRENDADORA Y FACTOR BANORTE, S.A. DE C.V.; SOCIEDAD FINANCIERA DE OBJETO MULTIPLE

　　　　Appellees.

------------------------------

CARTOGRAF USA, INC.

　　　　Party-in-Interest - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:23-mc-00008-DJN)

———————

Argued:  October 29, 2024　　　　　　　　　Decided:  January 22, 2025

———————

Before AGEE, RICHARDSON, and BERNER, Circuit Judges.

———————

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge Richardson and Judge Berner joined.

———————

**ARGUED:**  Eric John Cassidy, CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, Houston, Texas, for Appellant.  Kellie Ann Majcher, HOGAN LOVELLS US LLP, Tysons, Virginia, for Appellees.  **ON BRIEF:**  Jason D. Wright, Kaitlyn Devenyns, CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, New York, for Appellant.  Alvin F. Lindsay, Richard C. Lorenzo, Miami, Florida, Jon M. Talotta, Tysons, Virginia, Catherine E. Bratic, HOGAN LOVELLS US LLP, Houston, Texas, for Appellees.

AGEE, Circuit Judge:

Five associated entities of the Mexican bank Grupo Financiero Banorte (collectively, "Banorte") sued Cartograf S.A. de C.V. ("Cartograf Mexico") in the Fourth Civil Court of Mexico City (the "Mexico Court") in 2021.[1] Banorte filed an *ex parte* application (the "Application") in the Eastern District of Virginia to conduct discovery on Cartograf Mexico's American subsidiary, Cartograf USA, Inc. ("Cartograf USA") pursuant to 28 U.S.C. § 1782. The district court granted the Application. Banorte served Cartograf USA with a subpoena, which Cartograf USA moved to quash. The district court denied the motion to quash, and Cartograf USA now appeals. For the reasons that follow, we affirm.

I.

José Páramo Riestra ("Páramo"), Cartograf Mexico's sole administrator and legal representative, was Banorte's client both individually and through Cartograf Mexico. Páramo is also an officer, director, and ultimate beneficiary of Cartograf USA, a Delaware corporation registered to conduct business in Virginia. Cartograf USA recently declared bankruptcy and is in the process of winding up.

In 2018 and 2019, Páramo—on Cartograf Mexico's behalf—borrowed millions of dollars from Banorte through a series of financial agreements and promissory notes with

---

[1] These entities include Banco Mercantil del Norte, S.A., Institutión de Banca Múltiple, Grupo Financiero Banorte, Arrendora y Factor Banorte, S.A. de C.V., Sociedad Financiero de Objeto Múltiple, and Grupo Financiero Banorte. All of these entities are subsidiaries of Grupo Financiero Banorte, a large Mexican financial institution that offers retail and wholesale banking services.

2

repayment to occur under a set schedule.[2] Banorte contends that Páramo and Cartograf Mexico defaulted on the loans in 2021 and subsequently defrauded Banorte by concealing more than $31 million USD and $17 million MXN in Cartograf USA and another entity. In April 2021, Banorte sued Cartograf Mexico and Páramo in the Mexico Court and requested injunctive relief to freeze Páramo's and Cartograf Mexico's assets and direct Cartograf Mexico's accounts receivable to the court's registry. Over the next two months, the Mexico Court granted Banorte's requested relief and, in order to extend that relief to certain associated entities of Cartograf Mexico, pierced Cartograf Mexico's corporate veil. Banorte subsequently initiated additional civil proceedings in Mexico to enforce the promissory notes and obtain damages from Páramo's and Cartograf Mexico's alleged breach of contract.

On July 17, 2023, Banorte filed an *ex parte* Application for an Order under 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings in the Eastern District of Virginia.[3] In the Application, Banorte sought "relevant and necessary documentary and/or testimonial evidence" from Cartograf USA, Timmons Group, Inc. and the Economic

---

[2] According to the parties' agreement, Banorte was the lender, Cartograf Mexico was the borrower and a guarantor, and Páramo was a joint and several obligor, as well as a guarantor for the promissory notes.

[3] Banorte also filed an *ex parte* § 1782 application in the District Court of the Southern District of Texas, which was granted. *In re Banco Mercantil de Norte*, No. 4:23-MC-01188, 2024 WL 3826524, at *1 (S.D. Tex. Aug. 14, 2024). However, the Fifth Circuit reversed, finding that the district court failed to offer any reasoning in support of its decision "beyond a cursory statement that it considered the parties' filings." *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 762 (5th Cir. 2024).

3

Development Authority of the County of Chesterfield.[4] J.A. 8. As to Cartograf USA, Banorte sought documents related to Cartograf USA's relationship and exchanges with other entities and certain clients, including its financial records, shareholder registry, meeting minutes, and to take the deposition testimony of a corporate representative of Cartograf USA.

In support of its Application, Banorte submitted hundreds of Mexican court documents from the civil proceedings in the Mexico Court, as well as a sworn declaration from Ricardo Aguirre Marín (the "Marín Declaration"), the attorney representing Banorte in Mexico. The Marín Declaration included a detailed description of the civil proceedings against Páramo and Cartograf Mexico and noted: "[A] criminal complaint has also been filed by Banorte [] against Cartograf [Mexico] and [] Páramo, which is pending and being investigated by the relevant authorities in Mexico." J.A. 58. Banorte did not submit any documents related to the alleged criminal complaint against Páramo and Cartograf Mexico.

On August 22, 2023, the district court granted the Application after finding that the § 1782 statutory requirements and the discretionary factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weighed in Banorte's favor. As relevant here, the district court gave Banorte leave to serve the proposed subpoenas on Cartograf USA, but noted that Cartograf USA could move to quash once the subpoenas

---

[4] Timmons Group is a Virginia-based engineering firm that Banorte alleges provided services and received compensation from Páramo. The Economic Development Authority of the County of Chesterfield is a political subdivision of the Commonwealth of Virginia. Neither entity is part of this lawsuit.

were executed. The next day, Banorte served the subpoenas seeking the documents and testimony requested in the Application.

On September 12, 2023, Cartograf USA filed a motion to quash the subpoena, arguing that Banorte failed to satisfy the § 1782 "for use" requirement and *Intel*'s discretionary factors. In Cartograf USA's view, Banorte's discovery requests were made in bad faith because Banorte could leverage any information discovered in this civil action to aid the criminal complaint filed against Páramo in Mexico in order to obtain a settlement.[5]

The district court denied the motion in large part, permitting discovery as to all requested information except for Cartograf USA's tax records.

Cartograf USA timely appealed, and we have jurisdiction under 28 U.S.C. § 1291. *See In re Newbrook Shipping Corp.*, 31 F.4th 889, 894 (4th Cir. 2022).

II.

A.

The Court reviews the district court's decision to grant the Application for an abuse of discretion. *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014). A district court abuses its discretion when its decision relies on a clearly erroneous finding of fact or misapprehension of law concerning an underlying issue at litigation. *Id.*

---

[5] On brief and at oral argument, Cartograf USA referred to a Mexican criminal proceeding. We can find no evidence of an ongoing proceeding in the record. Instead, the Marín Declaration and Banorte's memorandum in support of the Application both reference a "criminal complaint" against Páramo. For purposes of accuracy based on the record in front of us, we refer to the alleged criminal dimension of the Mexican proceedings as a "criminal complaint."

B.

As relevant here, § 1782 provides that a district court may order a person "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal," and that the order may be made "upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." 28 U.S.C. § 1782. Section 1782's twin aims are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp.*, 542 U.S. at 252 (internal quotations omitted).

To secure an order under § 1782, an applicant must satisfy the following statutory requirements: "(1) [t]he application must be made to the 'district court for the district in which the person resides or is found'; (2) the application must come from an 'interested person' or a foreign tribunal; (3) the application must seek evidence, including 'testimony' or 'a document'; and (4) the evidence sought by the application must be 'for use in a proceeding in a foreign or international tribunal.'" *In re Newbrook Shipping Corp.*, 31 F.4th at 894 (quoting § 1782(a)).

Even where the statutory requirements are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has the statutory authority to do so." *In re Eli Lilly & Co.*, 37 F.4th 160, 167–68 (4th. Cir. 2022) (cleaned up). In *Intel*, the Supreme Court identified four factors for a court to consider in exercising its discretion under § 1782: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'"; (2) 'the nature of the foreign tribunal, the character of the

6

proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Id.* at 168 (quoting *Intel Corp.*, 542 U.S. at 264–65). "The ultimate balance remains well within the district court's broad discretion[.]" *In re Newbrook Shipping Corp.*, 31 F.4th at 896; *see Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) ("Section 1782 affords the district courts wide discretion in responding to requests for assistance in proceedings before foreign tribunals." (internal quotations omitted)).

## C.

On appeal, Cartograf USA first argues that the district court abused its discretion by finding that the Application satisfied the statutory requirements. It contends that the requested discovery was not "for use" in a foreign proceeding as required under § 1782(a). Because the record clearly supports the district court's finding that Banorte seeks the discovery for use in the Mexican civil proceedings, we disagree.

An application under § 1782 "must show that each thing (or at least each category of things) sought is 'for use' in the foreign proceeding." *In re Newbrook Shipping Corp.*, 31 F.4th at 895. To satisfy the "for use" requirement, the applicant need not demonstrate that the requested discovery is "essential for victory in the foreign proceeding." *Id.* Instead, it need only show that "there is a reasonable possibility that the evidence sought will be

7

employed with some advantage or serve some use in the proceeding." *Id.* (internal quotations omitted).

Here, the district court correctly found that Banorte satisfied § 1782's "for use" requirement. *In re Newbrook Shipping Company* is instructive in that regard. There, we vacated and remanded the district court's grant of a § 1782 application seeking discovery for use in two foreign lawsuits: a proposed action in Nevis and an ongoing South African action. 31 F.4th at 895. In so holding, we reasoned that the "record's complexity counsel[ed]" in favor of such an outcome because (1) the Nevis action was "too speculative to be a 'proceeding,'" and (2) the South African court had recently clarified the scope of those proceedings and required that the parties comply with "existing discovery requests," which could "bear on the 'for use' requirement." *Id.* at 895–96.

The record in this case poses no such complexity. Banorte seeks documents related to Cartograf USA's relationship with various entities related to Cartograf Mexico and Páramo including financial information and records, exchanges with clients related to its agreements with Banorte, and deposition testimony from a Cartograf USA representative with knowledge of its dealings with Páramo and the Cartograf entities. It is apparent that there is a reasonable possibility that the requested discovery will be useful to Banorte in the Mexican civil proceedings to recover the funds it claims are due. Such evidence could shed light on Páramo's alleged use of Cartograf USA to conceal assets belonging to Cartograf Mexico, which should be available to Banorte to satisfy the debt. The district court thus did not abuse its discretion in finding that the Application satisfied § 1782's "for use" requirement.

8

Cartograf USA resists this conclusion, arguing that Banorte's two passing references to a criminal complaint in the Application leave the Court unable to discern whether the discovery will be "used for harassment or bad faith reasons in other known collateral litigation, whether criminal or civil." Opening Br. 14. We are unpersuaded that rejecting this speculative claim constitutes an abuse of discretion.

First, the Marín Declaration references a "criminal complaint" that was "filed by Banorte [] against Cartograf [Mexico] and [] Páramo, which is pending and being investigated by the relevant authorities in Mexico." J.A. 58. Second, relying on the Marín Declaration, Banorte's memorandum in support of the Application also references a "criminal complaint" that was filed in Mexico "based on the fraud perpetrated by [] Páramo and Cartograf [Mexico] [.]" J.A. 43. In light of the hundreds of pages submitted by Banorte detailing the Mexican civil proceedings, we decline to endorse Cartograf USA's unsupported argument that two passing references to a criminal complaint demonstrate bad faith on the part of Banorte. At bottom, these oblique references fail to undermine the reasonable likelihood that Banorte's requested discovery will serve a beneficial use in the Mexican civil proceeding.[6]

Further, Cartograf USA's reliance on *In re Republic of Turkey* is unavailing. There, the Republic of Turkey ("Turkey") failed to satisfy the "for use" factor because it refused to explain the nature of the foreign proceeding referenced in its § 1782 application. *In re*

---

[6] During oral argument, Banorte affirmed that it would not use any of the Application's discovery in the referenced criminal proceeding in Mexico. However, this pledge is not a factor in our analysis.

9

*Republic of Turkey*, No. 20 C 5012, 2021 WL 3022318, at *8 (N.D. Ill. July 16, 2021).

Turkey sought evidence from Concept Schools NFP, an American nonprofit charter school management company that was allegedly relevant to a Turkish money laundering investigation. *Id.* at *1. But Turkey failed to describe this investigation in any detail, relying only on vague and conclusory statements from two Turkish officials. The district court found that Turkey's application "offer[ed] nothing about . . . [the] claimed illicit activities . . ., nor [did] it offer any support for the proposition that these activities, whatever they are, are being funded by any of the respondents or others in the United States." *Id.* at *4 (internal quotations omitted). Consequently, the district court found that Turkey's application did not satisfy the "for use" requirement because the application represented "more of a fishing expedition into the respondents' financial activities than a legitimate use of § 1782." *Id.* (internal quotations omitted).

As the district court noted, unlike Turkey's conclusory characterization of the foreign proceeding, Banorte thoroughly explained the civil proceedings in Mexico. Indeed, Banorte discussed those civil proceedings in the Application and submitted hundreds of pages of Mexican court documents related to them. Far from the "fishing expedition" in *In re Republic of Turkey*, Banorte is plainly seeking specific discovery for legitimate use in the specific Mexico Court civil proceedings.

D.

Cartograf USA next contends that the district court improperly analyzed the second, third, and fourth discretionary *Intel* factors. Cartograf USA asserts that the second and third

*Intel* factors—the receptivity of the foreign government or court to U.S. federal-court assistance and whether the request attempts to circumvent foreign proof-gathering restrictions, respectively—support denying the Application because a Mexican privilege against self-incrimination applies to the requested discovery. As to the fourth factor— whether the request is unduly intrusive or burdensome—Cartograf USA contends that the district court abused its discretion in failing to sua sponte limit Banorte's use of the requested discovery to the Mexican civil proceedings. Because the district court acted well within its discretion in finding that the *Intel* factors favored granting the Application and denying the motion to quash, we again disagree with Cartograf USA.

In so much as Cartograf USA relies on a foreign privilege, we first address whether such a privilege bars discovery under § 1782 and, if so, the relevant standard in reviewing the existence of that privilege. We have recognized that § 1782(a), which "expressly shields privileged material," *Intel Corp.*, 542 U.S. at 260, extends to material protected by a foreign legal privilege, *see In re Grand Jury Proc., Doe No. 700*, 817 F.2d 1108, 1112 (4th Cir. 1987) (noting that § 1782(a) "forbids the taking of testimony in violation of any privilege, including the *Philippine* privilege against self-incrimination" (emphasis added)). Our sister circuits have also extended § 1782(a)'s shield to foreign privileges. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (citing § 1782(a)'s legislative history for the notion that the statute's use of the phrase "legally applicable privilege" extends to privileges recognized by foreign law); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) (recognizing that "[a] grant of discovery that trenched upon *clearly established* procedures of a foreign tribunal would not be within section 1782"

11

(emphasis and alteration in original) (quoting *John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3rd Cir. 1985))).

However, a circuit split exists as to the applicable standard in evaluating whether a party has shown that a foreign tribunal would not accept the evidence obtained through a § 1782 proceeding. The Second, Third, and Fifth Circuits have held that the party opposing discovery bears the burden of proving that the foreign tribunal would not be receptive to the evidence and that, absent such proof, the factor weighs in favor of granting discovery. *See Euromepa*, 51 F.3d at 1100; *Ecuadorian Plaintiffs*, 619 F.3d at 378; *In re Chevron Corp.*, 633 F.3d 153, 162–63 (3d Cir. 2011). To carry that burden, the Second and Fifth Circuits have held that the party opposing discovery must submit "authoritative proof," such as "a forum country's judicial, executive[,] or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]" *Euromepa*, 51 F.3d at 1100 (requiring that the party opposing discovery submit "authoritative proof" that the foreign tribunal would reject evidence obtained with the aid of § 1782); *Ecuadorian Plaintiffs*, 619 F.3d at 378 (requiring "authoritative proof" that a foreign tribunal would reject evidence due to a foreign privilege).

In contrast, the First, Seventh, and Eleventh Circuits have declined to impose a burden-shifting requirement, reasoning that "the Supreme Court gave great flexibility and discretion to district courts in weighing the [*Intel*] factors," and thus "did not intend to place a burden on either party." *In re Schlich*, 893 F.3d 40, 50 (1st Cir. 2018); *see Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019) (declining to adopt the "authoritative proof" standard because the *Intel* factors "are guideposts which help a

12

district court decide how to best exercise its discretion"); *In re Application of Venequip, S.A.*, 83 F.4th 1048, 1058 (7th Cir. 2023) (declining to adopt the "authoritative proof" standard because "the Supreme Court's nonexclusive list of potentially relevant factors gives the district court 'great flexibility and discretion'"). Under that approach, "[b]oth parties are free to argue their positions and submit evidence in support thereof, and the district court is then to consider all of that in weighing [the *Intel*] factors." *In re Schlich*, 893 F.3d at 50 (citations omitted).

In line with the Second, Third, and Fifth Circuits, we agree that the party asserting a foreign privilege bears the burden of establishing that privilege. *In re Chevron Corp.*, 633 F.3d at 162–63; *cf. N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011) ("A party asserting privilege has the burden of demonstrating its applicability." (citation omitted)). But we need not, for purposes of this case, adopt the Second and Fifth Circuit's "authoritative proof" standard.[7] It may well be prudent to require such strong proof to avoid "speculative forays into legal territories unfamiliar to federal judges." *Ecuadorian Plaintiffs*, 619 F.3d at 378 (cleaned up). But whether such a heightened standard were to apply here or not, the district court acted within its discretion.

Cartograf USA contends that the district court erred in failing to find that the second and third *Intel* factors supported its arguments because the requested discovery is barred

---

[7] As noted above, the Third Circuit holds that the party opposing discovery bears the burden of showing a foreign tribunal would not admit the requested evidence. *See In re Chevron Corp.*, 633 F.3d at 162–63. However, the Third Circuit did not specifically address whether "authoritative proof" was the applicable standard.

by a foreign privilege: the right against self-incrimination.[8] As to the second factor, the district court found that Cartograf USA failed to submit "reliable evidence" that the Mexican tribunal would not use the requested evidence and noted that Banorte cited "cases demonstrating Mexican courts' general receptivity to U.S. courts' assistance in discovery." *In re Application of Banco Mercantil De Norte, S.A.*, 2023 WL 6690708, at *7, *8. And as to the third factor, the district court found that "Cartograf USA [] raised plausible arguments," but that its reliance on a legal opinion from a Mexican law firm, Schütte & Delsol Gojon (the "Schütte Opinion"), did not constitute authoritative proof. *Id.* at *11. Consequently, the district court found that the second *Intel* factor supported Banorte and the third *Intel* factor favored neither party.

We find no abuse of discretion in the district court's conclusion as to the second and third *Intel* factors. In particular, we are not persuaded that the district court abused its discretion in finding that the Schütte Opinion did not compel a different outcome. Beyond a vague general discussion of the Mexican privilege, the Schütte Opinion merely opines that "[e]xploiting discovery proceedings in the United States to ultimately incriminate the party subject to said discovery, would be an attempt to circumvent . . . the right against self-incrimination." J.A. 382. And the Schütte Opinion concedes that "there is not much

---

[8] Our sister circuits have only addressed the "authoritative proof" standard in the context of the second *Intel* factor—the receptivity of the foreign tribunal to the requested discovery. However, Cartograf USA's arguments as to the third *Intel* factor—whether the § 1782 application is an attempt to circumvent foreign proof-gathering requirements—also turn on whether it adequately showed that the Mexican right against self-incrimination would apply to the requested discovery. The parties offer no reason and we see no need to apply different standards to the two factors when, as here, they both turn on the existence of a foreign privilege.

judicial precedent regarding this issue[.]" J.A. 381. Importantly, the Schütte Opinion also expressly states that it was "issued with limited information" and is "by no means [] a definitive legal opinion to be used officially by any party in any way." J.A. 383. The district court did not abuse its discretion in finding Banorte's submissions—i.e., cases indicating Mexican courts' receptivity to foreign discovery—more convincing than the Schütte Opinion. *See In re Schlich*, 893 F.3d at 51 (finding no abuse of discretion where the district court "considered all of the arguments and evidence submitted by both parties,[] [and] found [one party's] position and supporting evidence more convincing"). Accordingly, we decline to disturb the district court's discretionary decisions as to the second and third *Intel* factors.

As to the fourth factor, Cartograf USA takes issue with the district court's decision not to sua sponte limit the scope of discovery by preventing its use in the Mexican criminal proceeding. But we cannot fault the district court for failing to address an argument that Cartograf USA neglected to raise there and now raises for the first time on appeal. Indeed, "absent exceptional circumstances, we do not consider issues raised for the first time on appeal." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (cleaned up). Cartograf USA fails to offer any reason for its failure to raise the argument below, let alone a reason borne of exceptional circumstances.

Nonetheless, the record reflects that the district court carefully balanced the burden placed on Cartograf USA against Banorte's need for the requested discovery. For example, after finding this factor to slightly tip in Cartograf USA's favor as to its tax records, the district court exempted them from disclosure. *See In re Eli Lilly*, 37 F.4th at 168 (affirming

15

the district court's denial of a § 1782 application because "the factors addressed by the district court [fell] squarely within those factors identified by the Supreme Court in *Intel* as relevant"). The district court's careful consideration of this factor was plainly not an abuse of its discretion.

In sum, we find that the district court did not abuse its discretion in concluding that, on the whole, the second, third, and fourth *Intel* factors supported granting the Application and denying Cartograf USA's motion to quash Banorte's subpoena.

III.

For the reasons discussed, we affirm the district court's opinion granting the Application and denying Cartograf USA's motion to quash.

*AFFIRMED*